MARK S. ADAMS, SB#68300
ANDREW F. ADAMS, SB#275109
California Receivership Group, PBC
2716 Ocean Park Blvd., Suite 3010
Santa Monica, California 90405
Tel. (310) 471-8181
Fax (310) 471-8180
madams@calreceivers.com

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>Old Firehouse of Pomona, LLC,<br><br>   Debtor. | Case No.: 2:18-bk-11835-WB<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MARK S. ADAMS AND CALIFORNIA RECEIVERSHIP GROUP'S MOTION FOR ORDER AUTHORIZING SALE UNDER 11 U.S.C. § 363; DECLARATION OF MARK ADAMS**<br><br>Date: May 31, 2018<br>Time: 10:00 a.m.<br>Courtroom: 1375<br>Hon. Julia W. Brand |

NOTICE IS HEREBY GIVEN that on May 31, 2018 at 10:00 a.m. or as soon thereafter as the Court may be able to hear the matter, in Courtroom 1375 of the United States Bankruptcy Court for the Central District of California, located at 255 E. Temple Street, Los Angeles, CA 90012, State Court Receiver and Creditor Mark S. Adams and CALIFORNIA RECEIVERSHIP GROUP, (together, the "Receiver" or "Adams") hereby move the Court pursuant to 11 U.S.C. §363, Rule 6004 of the Federal Rules of Bankruptcy Procedure, and Rule 6004-1(c) of the Local Bankruptcy Rules for the Central District of California for an Order (a) authorizing the sale of certain bankruptcy estate real property known and designated as 100 and 130 East Alvarado St, Pomona, CA 91767, APN #8336-006-019; #8336-006-022 (the "Property") to "100 E. Alvarado

-1-

**RECEIVER'S MOTION FOR ORDER AUTHORIZING SALE UNDER 11 U.S.C. § 363**

St., LLC**,"** the prospective Buyer ("Buyer"), (b) approving the payment of a 6% broker's commission to professional real estate broker Danny Holznecht of Allied Commercial Real Estate ("Broker"), (c) finding that Buyer is a good faith purchaser entitled to the protections of 11 U.S.C. 363(m), (d) waiving the stay under FRBP 6004(h), and (e) granting such other relief as is just and appropriate. The sale requested here was already confirmed by the state court on February 15, 2018, discussed in this Court at the April 3, 2018 hearing. A copy of the purchase agreement is attached as **Exhibit 7**. This approval or confirmation would allow the sale already approved by the state court to be completed.

The hearing on this matter is scheduled for May 31, 2018 at 10:00 a.m. in Courtroom 1375 of the Edward R. Roybal Federal Building and Courthouse located at 255 E. Temple Street, Los Angeles, CA 90012. This will be held at the same time as the status conference and allow the Court to determine what future, if any, there is for the continued oversight of both this Court and the state court.

## I.    JURISDICTION AND VENUE

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This case is complicated by the concurrent jurisdiction of this Court post-Petition, and the state court that appointed the Receiver under the Health and Safety Code §17980.7(c) and Code of Civil Procedure §564. If the Petition is not going to be dismissed, then this Court has concurrent jurisdiction over the Property as part of the Debtor's estate.

## II.    STATEMENT OF FACTS

This Motion requests that this Court approve the sale of the receivership/bankruptcy estate property as approved by the state court on February 15, 2018. A copy of that Order is attached as **Exhibit 1** to the Declaration of Mark Adams. That Order was granted based upon the 4th-6th Receivers Reports, copies of which are attached as **Exhibits 2-4**. A brief summary of the

-2-

**RECEIVER'S MOTION FOR ORDER AUTHORIZING SALE UNDER 11 U.S.C. § 363**

facts of this case is provided here to lay out the reasons that this Court has a request to confirm the sale before it.

Old Firehouse of Pomona, LLC ("Debtor") took title to the real property at 100 East Alvarado St., Pomona, California 91767, APN #8336-006-019 ("Property") in August of 2008. The Property had been used first as a firehouse, then as a restaurant. By 2008, a fire (and the larger economic condition) had shut the Property down. Since that time, the Property has not been in use, except as an illegal "squat" used by the local homeless community. Per Debtor, the cost of permits and the work necessary to get the Property approved and nuisance-free is prohibitive and that is the reason that no tenant has occupied it in the Debtor's ten years of ownership.

After years of citations and warnings about the nuisance conditions and the homeless squatters, the City filed suit in state court seeking a variety of relief. In May of 2016, there was another fire on-site, and after five months of discussion, in October 2016, the City gave notice that they were going to seek the appointment of a receiver. On December 12, 2016, Judge Dan T. Oki granted the City's request, finding that the Debtor was negligent in operating the Property, that the Property was "substandard," "a public nuisance," and a "dangerous building," and that the violations would not be abated without the appointment of a receiver. A copy of that Order is attached as **Exhibit 5**.

After the appointment, state court Respondent Daniel Rafalian (who has a substantial property portfolio and does not appear to have other similarly-degraded properties) stepped in, and based upon his counsel's assurances and Rafalian's reputation, an arrangement was worked out where Debtors would remain in possession with the Receiver only in a monitoring role, ready to take possession if the Property reverted to its dangerous condition. By April of 2017, it was clear that the Debtor was not living up to that agreement, and so on April 27, 2017, the Receiver seized possession of the Property and removed the homeless occupants that Debtor had been allowing to stay on-site. Again, the Property is not a residential building, and would not be fit for habitation even if there were not nuisance conditions and violations throughout. So the illegal

-3-

**RECEIVER'S MOTION FOR ORDER AUTHORIZING SALE UNDER 11 U.S.C. § 363**

and unpermitted work, coupled with the squatters on-site made the Property particularly dangerous.

The appointing state court approved a $70,000 Receiver's Certificate, attached as **Exhibit 6**, which was funded, used to pay the immediate boarding and security costs, as well as partially pay the outstanding receivership costs, and has long since been depleted. But after Receiver seized possession in April 2017, the Property did not present the same problems, and Receiver was able to scale down the security and property caretaker visits by summer of 2017. Since that time, the Property has had a few break-ins or problems, but no trespassers beyond break-ins. The Property still presents a threat and could suffer from squatters again, but for the moment the daily checks by security and a local handyman have kept the Property preserved.

The sale of the Property has reportedly been Debtor's goal since the beginning. He had listed the Property for many months prior to the Receiver's appointment, and the Receiver listed the Property again with his own agent. As described more below, the Property is a unique historic building, and the only appropriate party to do the work necessary to remedy the violations is the owner that is going to own the Property going forward. It cannot be built out in advance of the sale, nor would it be financially viable to do the abatement work and then sell. So selling the Property is the ultimate goal, and there is no disagreement about that.

The question is one of price. Receiver put an offer of $450,000 to the state court, and the court confirmed that sale on September 21, 2017. That sale fell through on November 1, 2017, during the due diligence period, and another sale was recommended to the Court on January 4, 2018 for the same price. There had been substantial interest, although only two formal offers were submitted. The February 15, 2018 Sale Confirmation Order, confirming the sale at $450,000.00 to 100 E. Alvarado St., LLC is attached hereto as **Exhibit 1**.

The Receiver's recommendation to the state court both times was to sell the Property because only the next owner would know and be able to make the appropriate corrections and do the necessary work to fit the intended purpose for the Property. The Receiver could abate the

-4-
**RECEIVER'S MOTION FOR ORDER AUTHORIZING SALE UNDER 11 U.S.C. § 363**

nuisance conditions and violations, but because the Property is unique[1] and essentially has to be built to fit the next buyer, it does not make financial sense for the Receiver to do work that will be undone/redone by the next owner. The more efficient way to proceed is to sell as-is, and let the new owner build to fit. In this way, the Receiver was to secure and preserve the Property, but would not correct all of the violations on-site. While the Appointment Order does direct the Receiver to correct the violations, the economics and the nature of the Property call for a sale to an able and willing new owner to do the work, and the state court ratified that plan.

In December 2017, Debtor hired bankruptcy counsel to represent them in the state court action, and appeared to be brought under the control of a new member of the LLC. Daniel Rafalian had been the purported responsible party, although a Jake Halelouyan (spelled in different ways on different documents) was the actual day-to-day manager. Jake ultimately took over full responsibility for the LLC at some point, and on December 12, 2017, Jake paid the outstanding taxes in the amount of $42,915.87. This was taken as a sign of good faith, and removed the threat of the tax sale. However, that payment of the defaulted taxes[2] did not carry over to refinancing the hard money loan funding the Receiver's Certificate, any of the outstanding fees and costs owed to the Receiver or the City, and it did not spur Debtor to pay for proper Property caretakers.

Thus, even after the first sale fell through, and the taxes were paid off, the Receiver's recommendation remained to sell the Property because it was/is clear that the nuisance conditions are not going to be abated until a new owner takes possession. Receiver put the new recommended sale offer before the state court in a January 4, 2018 Report, for a January 18 status conference. At that status conference, the Court continued the matter to allow for Debtor to complete two separate requirements to prevent the need for sale: (1) to set up a caretaker who would ensure that the Property was being preserved and managed (in place of the Receiver's

---

[1] The Property is also recognized by the City as a historic property.
[2] The Property was to be sold at tax auction in October 2017, but with the sale offer and the state court order confirming that sale, Receiver negotiated with the County to postpone the tax sale for one year. The County reviewed the sale order and agreed to put it off.

-5-

**RECEIVER'S MOTION FOR ORDER AUTHORIZING SALE UNDER 11 U.S.C. § 363**

caretakers) and (2) to develop a plan to refinance the Receiver's Certificate and the amounts owed to the Receiver and the City. At that February 15, 2018 continued status conference, Debtor had done neither, and the Court signed the sale confirmation order. Five days after that, the current Petition was filed, and at the last hearing, the Court denied leave to exempt the entire state court proceeding (and therein the sale) and requested that a motion to approve the sale be filed.

The nature of the Property is what is causing so much of the confusion. It is a unique and historic Property and will require a unique buyer that can not only abate the nuisance conditions and fire damage, but also put it back into use. Debtors have been arguing that they just need more time to find that buyer, but at the same time the state court already found that they were failing in basic preservation of the Property during that time. And then even after the Receiver's appointment in state court, they again failed in their preservation and management. So, to remedy the problems and the danger the Property presents, a sale has to be completed. And now with two courts overseeing this matter, both Courts are requested to sign off on the arranged sale.

Adding to this chaos is the fact that there are four actual lots involved in this Property, three of which lie on the street, and one of which lies behind them. This issue is laid out in depth on pages 6-7 of the September 20, 2017 Ex Parte Application for Order Confirming the Sale of Receivership Property, attached as **Exhibit 3**. The one lot that lies behind appears to be part of the overall package owned by Debtor, but a Linda Kyungrae Lee claims to own it, through a 2012 Grant Deed to her parents.[3] While the issue of who actually owns that lot remains to be settled, the plan in the state court was to complete the sale, and then claimants to the lot would then make their claim to the sale proceeds, so that those coming disputes would not interfere with the Property getting put back to use. This was to be the most efficient way to deal with the dispute, as the daily interest and security costs of the state court Receiver are not insignificant. The Receiver hereby requests that this Court approve the sale that the state court approved previously on February 15, 2018. This Court set out the matter for review in late May 2018,

---

[3] Linda Lee has been participating in the state court action and will be served with this Motion.

-6-

**RECEIVER'S MOTION FOR ORDER AUTHORIZING SALE UNDER 11 U.S.C. § 363**

which is three months after the Petition was filed, in an attempt to see if there is a reason for this Court to be involved, and if there is the potential for a potential plan that would satisfy the necessary requirements. To date, Receiver has seen nothing evidencing that, thus this Motion is filed.

### III. THE SALE AGREEMENT

The state court approved the recommended sale on February 15, 2018, and a copy of that Order is attached as **Exhibit 1**. This was after a previous sale was approved on September 21, 2017, and then later fell through. The current sale is to a 100 E. Alvarado St., LLC for $450,000.00. A copy of the Sale Agreement is attached as **Exhibit 7**. Per the agent and the Receiver's own experience, that is the best offer, or close to the best offer that will be received. There might be a higher offer coming, but whatever hypothetical increase in purchase price is not likely to cover the continued delay, and the ongoing cost of preservation and management. Plus, the market is showing to the Receiver and to the parties here what the value is – if it were any higher, then better offers would have been received during the marketing period.

The buyer is "100 E. Alvarado St., LLC," which is an LLC that is meant to operate this Property after the sale. It was previously called Outdoor Food Court, LLC, but the purchasing party was switched based on the buyer's request. This LLC and its members own properties in Kansas City, MO, and Colton, CA. They presented the Receiver with some properties they own, and in the Receiver's due diligence no significant problems or complaints were discovered in reference to either the LLC, the members, or the properties themselves. While this LLC does not have a long track record, it is willing to drop its due diligence periods, has not pulled its offer even in the face of the extensive delays caused by this matter, and no disqualifying problems appear upon review.

In short, these are the exact type of buyers that would be expected. Their business is to rehabilitate distressed properties, and put them back into proper use. They have a history of repairing and operating apartment buildings and commercial stores. They are thus a good faith

-7-

**RECEIVER'S MOTION FOR ORDER AUTHORIZING SALE UNDER 11 U.S.C. § 363**

buyer under §363(m) as they are not connected to anyone involved in this matter or the state court matter, and are bona fide purchasers for value. <u>Zuercher Trust of 1999 v. Kravitz (In re Zuercher Trust of 1999)</u>, 2014 WL 7191348 (Mem. Dec.) (9th Cir. BAP Dec. 17, 2014). It was an arms-length negotiation, there was ample opportunity for competitive bidding, and the purchase price is at the market value of the Property. Further, they complied with the state court sale procedures. Moreover, their offer was the highest, and the only one to come from someone with a track record of remedying similar problems. So even if they were not the only serious offer made by anyone with a track record that bodes well, their offer was still the highest.

### IV. GRANTING THE MOTION IS IN THE BEST INTERESTS OF THE ESTATE

As noted above, the Property was marketed by the Receiver first in July 2017. The Property received an offer of $450,000.00, and the state court confirmed the sale on September 21, 2017. That sale fell through, but by January 4, 2018 the Property had received another offer for $450,000.00. Although there had been substantial interest, only two formal offers were submitted. On February 15, 2018 the Superior Court issued a Sale Confirmation Order confirming the sale at $450,000 to 100 E. Alvarado St., LLC (the "Buyer"), affirming that the sale was again the best way to complete the goals of the receivership and begin to wind the matter down.

Debtor claims to have an appraisal of the Property that states the value of the Property is $1.175 Million. This figure, though offered by a licensed appraiser, does not appear to be real, and in fact it was disproven by the last 10 months that the Property has been on the market, and before that for the years when Debtor had it on the market. As was briefed and argued multiple times before Judge Oki, if the value of the Property was more than $450,000.00, that would benefit everyone involved, and the Receiver would be the first to acknowledge that or even seek that out. But the market has shown what the value is, and there is absolutely no concrete evidence that the value is even half of what the appraisal claims. In fact, there is direct evidence to the contrary.

-8-
**RECEIVER'S MOTION FOR ORDER AUTHORIZING SALE UNDER 11 U.S.C. § 363**

The terms and conditions of the proposed sale, including the price and all contingencies, are in the best interest of the estate for several reasons.[4] First, the sale price was the highest bid received in six months of marketing. Second, although the Receiver secured the Property, there are still substantial improvements which will be required of the next owner to make the Property usable as a restaurant and comply with all applicable codes. This has affected the market value of the Property, and although there was great interest in the Property, there were only a few offers. A prospective buyer will have to be prepared to commit substantial funds, time, and energy to improve the Property,[5] and this is likely why the Property has received so few offers. Third, because the estate is responsible for paying Receivership fees (including interests and security costs), which are tied to Receiver's super-priority lien on the Property, the sooner the Property is sold and the lien is paid, the less the estate will have to pay. The determination for this Court has to be where the benefit of further time to explore a plan, or to see if a better buyer can be found outweighs the cost (both financial, but also to the neighbors) of putting off the sale and continuing this matter.

The Buyer is aware of the myriad issues with the Property and has agreed to purchase the Property for $450,000.00. They have been doing their prep work on this sale for some time, and have been patiently waiting since the state court approved the sale three months ago. The Buyers have a track record and history of rehabilitating distressed properties and putting them back into use, and while that track record is relatively short, the lack of any glaring deficiencies or problems is taken to be a good sign of their prospects as a buyer for the Property.

In light of the particular issues with the Property and the Receivership, and for the reasons mentioned above, the terms and conditions of the proposed sale, including the price and all contingencies, will yield the highest price and will end Receivership costs, thereby providing the maximum funds possible to the estate. This is in the best interest of the estate.

---

[4] These terms are laid out in the Agreement attached as **Exhibit 87.**

[5] This work is going to require undoing much of the work that was done by the homeless "work crew" installed by the Debtor. A new roof was put on during the Debtor's period of possession, but per the City no permits were ever pulled. So while it may be that the Debtor's crew actually did the work correctly and it just needs to be drawn and "daylighted," but much more likely is that it has to be pulled out and redone by a licensed contractor.

-9-

**RECEIVER'S MOTION FOR ORDER AUTHORIZING SALE UNDER 11 U.S.C. § 363**

The proposed sale is not subject to overbid, but Receiver has not been contacted by any potential overbidder, and in Receiver's business judgment, there are no viable alternative purchasers. Overbid procedures are a poor fit because the Property was marketed for a long period of time, and only one acceptable, reasonable offer was presented. And most importantly, the state court already ordered the sale of the Property, finding that it was necessary to complete the tasks of the appointment. So if there were to be an overbid procedure, that hypothetical overbid offer would have to go back to the state court for review, all while the Property sits. The cost of cancelling the current sale (again the overbid provision was not part of the original state court sale) and taking an overbid can be reviewed on a case-by-case basis, but the Receiver does not expect that to be necessary. Overbid is a poor fit for this sale.

### V.  IN THE ALTERNATIVE, THE COURT COULD DISMISS THE PETITION

As was noted at the last hearing, there are always complications when two courts are both concurrently overseeing a matter. A receiver appointed under Health & Safety Code is not the same as a standard rents and profits receiver, and there are different interests at play than is usually addressed when a bankruptcy court is tasked with a petition including real property that is currently in receivership. This is borne out in reviewing the 11 U.S.C. 543 turnover issues, where a standard Debtor In Possession would be inappropriate to take back possession of the nuisance property. The fit is even worse when the estate has ample equity, and the purpose of the bankruptcy was not clear at the outset.

This Court already denied the request to exempt the entire state court proceeding from the automatic stay and was specific that it needed to review any sale of the Property. And while there are relatively simple ways to ensure that both courts are satisfied in their oversight, at some point it should become clear that the purpose for filing this Petition was to stall the sale that the state court found necessary. And so, while that stall might be appropriate to determine if the Debtor can figure out a potential plan to deal with the matter in the long-term, the Receiver respectfully argues that three+ months post-Petition is more than ample time to develop that. In short, if the

-10-

**RECEIVER'S MOTION FOR ORDER AUTHORIZING SALE UNDER 11 U.S.C. § 363**

Court gets to this hearing and there is no foreseeable way to manage the matter going forward, then this Court should approve the sale, or dismiss the matter entirely.

## VI. CONCLUSION

For the foregoing reasons, the Receiver requests that the Court grant the Motion and enter an order (a) authorizing the sale of certain real Property to the Buyer, finding that the Buyer is a good faith purchaser per 11 U.S.C. §363(m) and granting such other relief as is just and appropriate.

Dated: May 9, 2018          /s/Andrew F. Adams
                                     Attorney at California Receivership Group, PBC

MARK S. ADAMS, SB#68300
ANDREW F. ADAMS, SB#275109
California Receivership Group, PBC
2716 Ocean Park Boulevard, Suite 3010
Santa Monica, CA 90405
Tel.: (310) 471-8181
Fax: (310) 471-8180
madams@calreceivers.com
Court-Appointed Receiver

# IN THE UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>Old Firehouse of Pomona, LLC,<br><br>Debtor. | Case No.: 2:18-bk-11835-WB<br><br>Chapter 11<br><br>**MARK S. ADAMS DECLARATION IN SUPPORT OF MOTION FOR ORDER AUTHORIZING SALE UNDER 11 U.S.C. § 363**<br><br>Date: May 31, 2018<br>Time: 10:00 a.m.<br>Courtroom: 1375<br><br>Hon. Julia W. Brand |

I, Mark S. Adams, do declare as follows:

1. I am an attorney licensed to practice in California.

2. I am the court-appointed Receiver in the matter of *City of Pomona v. Old Firehouse of Pomona, LLC,* Case #KS020348 for the real property located at 100 E. Alvarado St., Pomona, CA 91767, APN #8336-006-019 (the "Property") pursuant to a Superior Court Order issued on December 16, 2016, a copy of that Order is attached as **Exhibit 5**. An issue we encountered is that there are four actual lots involved in this Property, this issue is laid out in depth on pages 6-7 of the September 20, 2017 Ex Parte Application for Order Confirming Sale of Receivership Property, attached as **Exhibit 3**.

-1-
**DECLARATION OF MARK S. ADAMS**

3. The immediate Receivership costs to board and secure the property as well as develop a rehabilitation plan were covered by a $70,000 Receiver's Certificate that the appointing sate court approved, a copy of the Certificate is attached as **Exhibit 6**.

4. In my capacity as Receiver, I marketed the Property through Danny Holznecht of Allied Commercial Real Estate for more than six months. I received one offer for $450,000.00, (originally at $475,000 but reduced upon inspection) and I recommended the sale to the Superior Court, which issued an order confirming the sale on September 21, 2017. That sale fell through on November 1, during the due diligence period, and another sale was recommended to the Court on January 4, 2018 for the same price. A copy of the Sale Agreement is attached as **Exhibit 7**. That sale was to 100 E. Alvarado, LLC, a related entity to the original offeror, Outdoor Food Court, LLC. My staff researched this LLC and its history of previous properties. In doing so, my staff determined that the LLC and it members had an acceptable track record of rehabilitating dilapidated apartment buildings and commercial stores and putting them into proper use. While the LLC's track record was shorter than my staff would have liked to see, there were no glaring deficiencies in the LLC's work that would merit disqualification from the arranged sale. Furthermore, the buyer LLC has been cooperative in releasing all contingencies, and has shown a great deal of patience with the delays to the sale caused by this matter. The February 15, 2018 Sale Confirmation Order, confirming the sale at $450,000 to 100 E. Alvarado St., LLC is attached hereto as **Exhibit 1**. That Order was granted based upon the 4th-6th Receivers Reports, copies of which are attached as **Exhibits 2-4**.

5. Debtor claims to have an appraisal of the Property that states the value of the Property is $1.175 Million. This figure does not comport with reality in my opinion. Based on my efforts to market the property, and the fact that the highest bid I received over a six-month period was $475,000.00 – which was later reduced, I believe the market value of the property to be $450,000.00. At this point, the Property has been listed for sale for nearly a year and I have seen absolutely no indication that the value is even half the amount suggested by Debtor's appraisal.

-2-
**DECLARATION OF MARK S. ADAMS**

6. The terms and conditions of the proposed sale, including the price and all contingencies, are in the best interest of the estate for several reasons. First, the sale price is the highest bid received in six months of marketing. Second, although I secured the Property, there are still substantial improvements which will be required of the next owner to make the Property usable as a restaurant and comply with all applicable codes. This has affected the market value of the Property, and although there was great interest in the Property, there were only a few offers. A prospective buyer will have to be prepared to commit substantial funds, time, and energy to improve the Property, and I believe this is why the Property has received so few offers. Third, because the estate is responsible for paying Receivership fees (including interests and security costs), which are tied to Receiver's super-priority lien on the Property, the sooner the Property is sold and the lien is paid, the less the estate will have to pay.

7. The prospective buyer, 100 E. Alvarado St., LLC (the "Buyer"), is aware of the myriad issues with the Property and has agreed to purchase the Property for $450,000.00 and to make the substantial improvements that the Property requires.

8. In light of the particular issues with the Property and the Receivership, and for the reasons mentioned above, the terms and conditions of the proposed sale, including the price and all contingencies, are in the best interest of the estate.

9. The proposed sale is not subject to overbid, and I certify that I have not been contacted by any potential overbidder, and in my business judgment, there are no viable alternative purchasers.

///
///
///
///
///
///
///

-3-
**DECLARATION OF MARK S. ADAMS**

10. An additional copy of the notice and form F 6004-2, Notice of Sale of Estate Property was submitted to the court clerk at the time of filing this motion.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 9th day of May, 2018, in Santa Monica, California.

/s/ Mark S. Adams_____
Mark Adams, State Court-Appointed Receiver

-4-
**DECLARATION OF MARK S. ADAMS**